|, GASKINS, J.
The defendants appeal from a summary judgment granted in favor of the plaintiffs on the principal demand, as well as from the trial court’s granting of the plaintiffs’ exceptions of res judicata and prescription *93 as to the defendants’ counterclaims. We affirm.
FACTS
Southern Hunting Products, Ltd. (“Southern Hunting”), was owned by Claude C. Frey, Jane H. Frey, and Fulton Roberts, who are defendants in the instant case. The company attempted to construct and sell deer stands under the name “Ambusher.”
In 1999, John D. Cooper and Thad W. Cooper (“the Coopers”) invested more than $300,000 in Southern Hunting in exchange for 50 percent of the stock. Disputes soon arose. In August 2000, Thad Cooper removed several cabinets of business records from the company office in Winnsboro and took them to his office in Rayville.
In order to resolve their dispute, an agreement was confected that Southern Hunting would reacquire the Coopers’ stock. The Coopers, as part of the agreement, would pay off outstanding obligations owed by Frey and Roberts to First Family Finance. Southern Hunting executed a promissory note in the amount of $302,539, which covered the amount the Coopers were paying to First Family Finance, plus $200,000. The note was to be secured by all the collateral of Frey and Roberts held by First Family Finance, plus all assets of Southern Hunting (which were the same assets held under mortgage by their father, David Cooper III). Frey and Roberts further agreed that each would personally guarantee payment of the note in pthe amount of $151,269.63. Frey and his wife signed a collateral pledge, a collateral mortgage note for $102,374 and a collateral mortgage on two tracts of immovable property in Franklin Parish. The parties acknowledged that as of the execution of the agreement Southern Hunting was indebted to the Coopers for $318,000 and the Coopers were foregoing “a substantial portion” of that debt. However, should Southern Hunting or Frey and Roberts default, the parties agreed that the principal amount of the indebtedness would revert to the sum of $318,000. All documents were dated October 27, 2000. Thereafter, the defendants made no payments on the debt.
In April 2002, the Coopers filed a petition for ordinary process against Southern Hunting, the Freys, and Roberts. They asserted that they were owners and holders of a promissory note for $302,539 signed on October 27, 2000, by Frey as president of Southern Hunting and that the payments under the note were due and owing. According to the suit, the note was secured by several security devices, including a security agreement on the company’s equipment signed by Frey for the company. Roberts and Frey each were also sued under their continuing guaranty agreements obligating each for $151,269.63. The suit additionally sought recognition of the plaintiffs’ interest in the Freys’ mortgaged property.
In August 2002, the defendants filed an answer and counterclaim. As to the Coopers’ allegations, they asserted that the security devices were void due to a vice of consent and that they were signed under duress. They also asserted the lack of a valid debt. In reconvention, the defendants ladaimed that much of Southern Hunting’s financial problems were the result of the Coopers’ mismanagement. They also contended that Thad Cooper breached a fiduciary duty to the company when he removed the business records from the office. The Coopers filed a general denial to the defendants’ counterclaim.
In October 2002, the Coopers filed a motion for summary judgment. Attached to the motion was an affidavit by the Coo *94 pers essentially attesting to the facts set forth in the petition.
The defendants opposed the motion for summary judgment. Among the documents they filed in opposition was an affidavit by Misty Wilson, a Southern Hunting employee, in which she recounted an incident that happened prior to the agreement when the business records were taken the night after Thad Cooper came to the office to review them. She indicated that, without the business records, the defendants were unable to operate the company properly. In a supplemental affidavit, the Coopers stated that both sides were represented by counsel in the negotiation of the promissory note and security instruments.
In February 2003, the trial court denied the Coopers’ motion for summary judgment. In its written reasons, the trial court based the denial on its finding that discovery was not adequate at that time.
In November 2003, the Freys filed an amended counterclaim in which they contended that the mortgage had an error in the property description. In their answer, the Coopers stated that they acquired mortgages on property previously mortgaged to Associates Financial Services of America, Inc. 1¿(“Associates”).[1] The property description in the Associates mortgage was the same one in the mortgage the Coopers took. In December 2003, the Freys filed a second amended counterclaim in which they claimed that the Coopers were engaged in a conspiracy with their father, David Cooper, to take over Southern Hunting. They further asserted that the “entire course of business was characterized by fraud and misrepresentation.”
In January 2004, the Coopers filed an exception of vagueness and an answer to the second amended counterclaim. They also filed peremptory exceptions of res judicata and prescription. As to res judi-cata, they claimed that the agreement entered into by the parties on October 27, 2000, was intended to resolve the issues raised in the defendants’ counterclaims. As these matters have been previously compromised, they could not be raised again. The prescription exception maintained that the matters raised in the counterclaims occurred more than a year before the pleadings were filed and thus were prescribed. Additionally, the Coopers filed a motion urging the trial court to reconsider their motion for summary judgment since discovery was about to be completed and all dispositive motions were to be heard on February 2, 2004.
On March 10, 2004, the trial court rendered written reasons for judgment on the Coopers’ motion for summary judgment and their exceptions. The court found that there was no factual basis for the defendants’ assertion of no consideration for the promissory note and security instruments. In his deposition, Frey admitted that the Coopers had |Binvested $313,251.60 in Southern Hunting and that they had paid off two notes totaling $96,786.93 he owed to Associates. Nor was there a basis for the claim of duress arising from the fear that the Coopers would file suit against Southern Hunting; the threat of legal action is not considered duress. As to the claim of lack of consent, the trial court observed that these documents were executed pursuant to negotiations by their respective attorneys to resolve business disputes among the parties. Although the Freys claimed that there was *95 an error in the property description in the mortgage they executed in favor of the Coopers, the court noted that Frey admitted that the mortgage to Associates had the same property description and that he intended for the Coopers to take a mortgage on the same property previously mortgaged to Associates. Finding no merit to the claims raised by the defendants, the trial court granted summary judgment in the Coopers’ favor.
As to the exceptions, the trial court found that the one-year prescriptive period of La. C.C. art. 3492 applied to the tortious counterclaims asserted by the defendants. Consequently, it sustained the prescription exception. As to the exception of res judi-cata, it found that the October 27, 2000, agreement entered into by the parties was intended to resolve their conflicts over the operation of Southern Hunting. The Coopers agreed to transfer their 50 percent interest to the defendants in exchange for the execution of the promissory note and security instruments. The court found that the parties had entered into a compromise settlement of all the claims raised in the counterclaims filed in the instant suit. Accordingly, the Rcourt sustained the exception of res judicata, which is the proper method of asserting a compromise agreement.
On March 15, 2004, the defendants filed a motion asking the trial court to reconsider its reasons for granting summary judgment. On April 2, 2004, the trial court rendered written reasons for judgment on this motion. It again found that the Coopers’ actions did not constitute duress that would vitiate the promissory note. As to the Freys’ desire to reform the property description in the mortgage to remove their house, the court found that they were not entitled to unilaterally do so. The Coopers paid off the mortgage to Associates in exchange for a mortgage on the same description as held by Associates. The trial court discounted the defendants’ contention that the Coopers’ actions were a continuing tort and that the doctrine of contra non valentum applied; it reiterated its finding that the counterclaims were prescribed. The court again found that res judicata was applicable as to the counterclaims and the October 27, 2000, agreement.
The trial court signed a judgment in favor of the Coopers on April 21, 2004.
The defendants appeal.[2]
SERVICE OF PROCESS
The defendants raise issues pertaining to the propriety of the service of process for the first time on appeal. However, they failed to raise these matters in the trial court, even in the motion in which they requested that the |7trial court reconsider the granting of summary judgment. No exception of insufficient service was filed either. Consequently, the issue is deemed waived. See Dumas v. Angus Chemical Company, 31,399 (La.App.2d Cir.1/13/99), 729 So.2d 624.
The defendants also complain that no hearing was held. However, letters from counsel for the plaintiffs to the trial judge and to counsel for the defendants stating that the matter was being submitted on briefs by agreement were admitted at oral arguments. Again, no objection was made, nor did the defendants raise this *96 complaint in their motion to reconsider. This argument also lacks merit.
ISSUES OF MATERIAL FACT
The defendants contend that the trial court erred in granting summary judgment because there were issues of material fact as to the claims of duress and failure of consideration.

Motion for Summary Judgment

Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, 2003-1146 (La.1/21/04), 864 So.2d 129. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, |sshow that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Summary judgment procedure is now favored under our law. La. C.C.P. art. 966(A)(2).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. Art. 966(C)(2).

Duress/Conspiracy

Threat to institute suit for the purpose of collecting a claim does not amount to duress. Alamo Amusement Co. v. Harcol Motion Picture Industries, Inc., 147 So. 114 (La.App.Orl.1933). The threat of doing a lawful act or a threat of exercising a right does not constitute duress. La. C.C. art.1962; Grezaffi v. Smith, 93 1696 (La.App. 1st Cir.6/24/94), 641 So.2d 210.
The defendants claim that they were victims of duress because Thad Cooper “stole” the company’s records and thus paralyzed their ability to conduct business. However, the deposition testimony of the Freys and [¡¡Roberts demonstrated that they felt “under duress” to sign the agreement with the Coopers and the accompanying security devices because the Coopers could “tie up” and “shut down” the company with litigation. Like the trial court, we conclude that the Coopers’ threat to initiate a lawsuit did not constitute duress that would vitiate the defendants’ consent.
The defendants also argue that the Coopers engaged in a conspiracy against them with their father David Cooper. However, our reading of the defendants’ depositions reveals that the defendants failed to produce factual support sufficient to establish that they would be able to satisfy then-evidentiary burden of proof at trial on this matter.

Consideration

Likewise, we agree with the trial court’s determination that the defendants’ claim of failure of consideration was merit-less. The consideration for the promissory note was the Coopers selling their 50 percent of the stock back to Southern Hunt *97 ing, and paying the Freys’ and Roberts’ debts to Associates. Mr. Frey testified that the defendants made no payments under the promissory notes. He also conceded that the Coopers had paid more than $300,000 to the defendants as an investment in the company.

Mortgage Description

The defendants also argue that the collateral mortgage signed by the Freys contained a property description which erroneously included their house. The Freys claim that they did not intend to mortgage that property to the Coopers. An inaccurate legal description in a real estate contract may be | incorrected so as to make it accurately express the true intent and agreement of the parties. M.R. Bldg. Corporation v. Bayou Utilities, Inc., 25,759 (La.App.2d Cir.5/4/94), 637 So.2d 614. However, in their testimony the Freys admitted that the Coopers agreed to pay off their indebtedness in exchange for a mortgage on the same property upon which Associates had held a mortgage. The property description in the Associates mortgage was identical to the one executed in favor of the Coopers. The Freys never complained of the property description in the Associates mortgage. The trial court found that the Freys were not entitled to unilaterally change the property description under these circumstances. We agree. Further, the Freys failed to produce factual support sufficient to establish that they would be able to show that the property description did not express the true intent and agreement of the parties.
On this record, it appears that the plaintiffs were entitled to summary judgment as a matter of law and that there were no issues of material fact sufficient to defeat the granting of the plaintiffs’ motion for summary judgment.
EXCEPTIONS OF PRESCRIPTION AND RES JUDICATA
Having found that the claims of all the parties were correctly decided in the plaintiffs’ favor in the summary judgment, we pretermit any in-depth discussion of the exception of prescription. We do note that the counterclaims regarding mismanagement and conspiracy are torts subject to the one-year prescriptive period under La. C.C. art. 3492. Since those claims arose before October 2000 and suit was filed in April 2002, these |nclaims have prescribed. Since we found that summary judgment was appropriate, we additionally pretermit consideration of the exception of res judicata.
CONCLUSION
The judgment of the trial court in favor of the plaintiffs/appellees is affirmed. Costs are assessed against the defendants/appellants.
AFFIRMED.
MOORE, J., concurs with reasons.

. It appears that First Family Finance and Associates Financial Services of America are interconnected.

. Both sides sought to supplement the appellate record. The defendants' motion was denied as unnecessary because the requested documents had already been supplemented into the record. The Coopers' request to supplement involved documents pertaining to the parties’ alleged agreement to submit the motions on briefs and without a hearing. Although this motion was initially referred to the merits, it was granted at oral argument.